Our next case for argument this morning is United States v. Pierson. Ms. Christensen Good morning, your honors, may it please the court. My name is Joanna Christensen and I represent the appellant, Byron Pierson, in this matter. The district court abused its discretion by allowing course of investigation evidence to be admitted in this case by the government. The evidence at issue was statements made by D.C. calling the police to report that Mr. Pierson had come to our house, had a criminal history, and may be armed. She said he may come back. The district court initially limited the evidence to exactly that. Then, after opening statements, reversed that and allowed the government to put in additional facts, including that the officer believed D.C. was scared, the officer was uneasy, that Mr. Pierson was likely armed, and that he was threatened to shoot. Judge Goldberg Were there any objections to those specific questions? Ms. Christensen During the testimony, no. Judge Goldberg The reason I ask that question is the following. I don't think there's any doubt here that the defendant opened the door to this. The judge told him not to do it and then counsel did it. You know why counsel did it. They did it for a particular purpose and they did it. Then the judge said, I'm going to let the evidence in for this limited purpose. Maybe the government did more than they should have with the evidence. Maybe they milked it a little bit. But there were no objections during the testimony to limit what the government let in. Then I thought that the district judge gave a very thorough and comprehensive limiting instruction right after the testimony as to how the jury could use that testimony. What do we do with the fact that there were no specific objections to the questions? The judge, I don't think, has any obligation to cut off the prosecutor and say, wait, you're gilding the lily here a little bit. Move this along. It could have. Some judges might have, but right, right. I agree, Your Honor. I think that it was a judgment call on defense attorneys on the defense attorney's part. Do you want to bring more attention to it or not? Right. The judge had said he was going to give a limiting instruction. So at that point, having litigated the issue, I believe defense counsel thought that that was fine to preserve it, um, and further. And I absolutely agree that I think the government went further than it should have in this case and probably farther than they needed to in this case, right? Where the defendant was arrested with the gun under his body. I mean, there was not much of a defense here, right? Right. And this goes, you know, a little further down in my argument. But of course, harmless error is always going to be an issue here. But we keep seeing this come up over and over again, where the government just goes too far with evidence it doesn't need. And then this court doesn't reverse because it's harmless error and looks at the overwhelming evidence, which I'm not conceding there was overwhelming evidence in this case, of course. But then without a reversal, the government keeps doing it, knowing that they won't get reversed. The conviction will remain. And I think that's the problem that this court has repeatedly talked about in a series of parallel. You know, there are some cases that say, course of investigation is not hearsay. It can be used in certain circumstances. And then the cases say that it's rarely relevant. And it has, there's very little value to it because the government does not have to prove what the course of the investigation was here. And about your point about opening the door, I don't agree that defense counsel opened the door to what the judge then did. I think defense counsel walked by the door, let's say it that way, and hinted at the fact that this arrest may have been a surprise to Mr. or the car stop, I'm sorry, might have been a surprise to Mr. Pearson because of the circumstances. But then when you look at the evidence, that was never part of the case then later. And that could have been, we don't know, because then the evidence changed. It shifted because of the court's reversal of its own ruling. You know, in the cases, I've distilled down that there are really three reasons this court has allowed the course of the investigation to connect the dots. And I'm not sure that that is what's happening here. You know, it could have very well stayed to what the court limited it to, and that connects the dots. You know, we know why they're investigating him and that's enough. To address officers as officious intermeddlers, and that certainly wasn't what was argued here, necessarily, and nefarious conduct on the part of the officers also not argued. And then to clarify a complex investigation, that's the United States versus law case. But in that case, the course of the investigation evidence was corroborated by other testimony. So the problem is, and in this court in Silva, that even if this case was re-organized, it must always end with the 403 analysis. And in Mr. Pearson's case, that 403 analysis, there was nothing that changed it. And the court just changed its mind and didn't address why that portion of its analysis that made it first rule the evidence couldn't be admitted now became obsolete. There was no explanation of that in the record. So I did want to address briefly the lack of hearing on the proffer letter. I'm sorry. To go back to that final point, is that actually required a rebalancing of 403 issues in this circumstance as a matter of evidentiary law? That when the defense opens the door to a previously precluded line of questioning, that the judge has to do a rebalancing under Rule 403? I don't know that that's required. I'm not aware of a case specifically that says that. I think we have a little bit of a unique situation, although there are cases that talk about opening the door. But when then all of the evidence the court said couldn't come in now comes in, I think the analysis under 403 should happen because it is a key part of the application of the rules of evidence and the application of constitutional law to this case. And Gomez didn't go that far, but, of course, Gomez didn't have this issue specifically. So I am preserving the other issue. I'm into my rebuttal time, so I'll save that unless the court has any questions about the proffer letter issue for me. All right, thank you. Ms. Masson? Good morning, Your Honors. Assistant United States Attorney Kelsey Masson on behalf of the appellee of the United States. There was no abuse of discretion here, respectfully. I think this is a perfect scenario for where a course of investigation testimony is actually very important to fill a gap that otherwise the jury would not be able to fill themselves. And I think it's pretty clear from the opening statements that defense counsel gave in this case at trial that they were fully intending to exploit that gap in the testimony. I think this is an example of where sort of the cold record on appeal doesn't give the full picture, but the clear tone of that opening statement and the implication was that the complainant was not to be believed. By, I think, bringing up the relationship, it was an ex, sort of had some sort of agenda. I think this is a scenario where defense counsel was very clearly planning to exploit the gap in the evidence, and given the ruling that the court had previously made on the motion in limine in limiting the testimony, the government was certainly still bound by that, but given defense counsel's statement in openings, I think it was clear that that door was, was opened. But, you know, I mean, the government in opening statements went farther than the district court allowed by saying that he was likely armed rather than may, may be armed. What do you think the defense could have done to correct the misimpression this created without violating the court's order? Because that was a fairly prejudicial misstatement, given that the sole issue is whether he possessed the gun. Respectfully, your honor, I don't know if there's quite so much real estate between may and likely as, as your honor may think. I think it implies both words sort of imply a possibility that the person is armed. And frankly, the evidence that the actual facts of the case. I really disagree with you on that. Because, you know, may would be, you know, like and he, he always is sort of thing. I do think that I do think there's maybe a city block between the two. Well, in your eye, the difficulty with this is too, is that defense counsel did object and actually did move for a mistrial after that opening statement, the district court addressed that and, and stated and ruled that the motion limine was still intact, advise both parties to hew very closely. And the government certainly would have hewed very closely to the motion in limine and eliciting testimony from officer menace, who took the actual report from the complainant in this case. And so I think the problem is that defense counsel then felt that they still needed to respond. But if, if that's the rule that the court would allow, then that sort of allows a tit for tat response to motions in limine. And I think what defense counsel could have done is hewed very closely. And then the evidence that would have been elicited would have then also hewed very closely to that motion in limine. But by adding significantly more details than what the government did in opening statement by referencing that this was a complaint, that it was a complaint from an ax, I think kicked that door sort of wide open. And either way, as opposing counsel referenced in her argument, the harmless error standard I think is also met here. There was overwhelming evidence of the defendant's guilt and the court gave a very thorough curative instruction. Some of the case law that opposing counsel cites in their brief, specifically Jones versus Basinger, I think is extremely distinguishable here. There was no curative instruction given in that case whatsoever. There was extensive testimony, extensive hearsay testimony regarding an informant's tip that was completely improper bolstering. And that's just simply not what happened here. If I could move just briefly to the proffer argument, I understand opposing counsel didn't get to it in hers, but I would just like to like to say that there was no abuse of discretion on that. I do have a question that I would, you know, because Pearson contends that even though there was not a triggering event, he had to completely change his theory of defense because of the threat of the proffer agreement waiver. I didn't see a response from the government on that point in the brief, you know, that the waiver tied his hands in formulating a defense. And so that's what I would really appreciate your narrowing in on, please. Sure, Your Honor. The defense did say that in some of the back and forth on the record about this proffer agreement. It's not clear from the way the trial proceeded that they were actually hamstrung in any way. Mr. Pearson did put on a meaningful defense. There was extensive cross-examination of the government's witnesses, especially focused on the lack of forensic evidence, which of course is always, I think, pretty, is always relevant and juries are always interested to hear that. So I'm not quite sure on what defense Mr. Pearson would have put on. I don't think he's entitled to put on a defense that would have actually been false. He's not entitled to. Did Mr. Pearson ever proffer what defense he would have put on absent the judge's ruling? He did not, Your Honor, and that I think is a problem because we just don't know what evidence he was thinking he was going to be able to put in front of the jury that he was then prohibited from doing. Whether that was actually his testimony or testimony of another witness, we simply don't know. And I think this court has been very clear that proffer agreements are enforceable. They are very important tools that the government uses in order to get information from potentially cooperating defendants. It's in every party's interest to be able to enforce those agreements and to ensure that parties are being truthful in those proffer statements. In your brief on page 15, there's a footnote of, let's see, in the response brief, yeah, that the defense counsel had an affidavit from Pearson on the issue of the waiver and the record tells us why that affidavit wasn't offered. It doesn't. I don't know why defense counsel did not enter that affidavit into evidence. I don't know what the affidavit says. They offered no explanation whatsoever either on or off the record to the government about what that affidavit would have said or why they chose not to submit it to the court. Thank you. And fundamentally, the defendant did not raise any substantial claim here that would entitle him to an evidentiary hearing on the issue of knowing waiver. There's nothing substantial about a defendant who simply claims that he didn't know, especially in face of a written proffer letter that has his signature on it that specifically says, I understand the agreement, and especially in light of an affidavit from his attorney that reiterates the fact that the terms of the proffer agreement were explained to him. So if the court has no further questions, the government would ask that Mr. Pearson's conviction be affirmed. Thank you. Thank you. Ms. Christensen. I'll primarily address the proffer issue. So the lack of defense, defense counsel was completely tied in his hands and we wouldn't know exactly why or how or what the defense was. And that's one of the consequences of waiver that Mr. Pearson didn't understand. And we don't know what the affidavit was. It wasn't submitted. It would probably be helpful if it had been submitted, Mr. Pearson's affidavit. But all we know from his trial counsel affidavit, his formal trial counsel, is that he understood the terms of the agreement, but it doesn't talk about the extent of his understanding, particularly when it comes to the consequences at trial of the proffer agreement. So I think there's a, there's a lack of evidence that does not necessarily skew against Mr. Pearson. And harmless error comes right in there for both issues. The overwhelming evidence, well, I think from knowledge of the case, the gun was found under Mr. Pearson, not on him, and that he would have been able to argue that that it was not his gun, which he could not argue. That was essentially the only element, the possession, his possession, was the only element left open. I don't think he contested the other elements of the felon in possession statute. So the harmless error is not, you know, as overwhelming or the evidence is not as overwhelming as the government would like to see it is. And the introduction of an ex-girlfriend as being the complainant is no more serious than an investigation. I don't think that that's necessarily questions the officer's motives in whether it's an ex-girlfriend or just someone who complained. The fact is, is that there was a small gap and perhaps defense counsel saw that, but it was not in violation of the motion in limine. But then on the other hand, then the government had already gone too far. So in its opening statement, talking about may have had a gun, then defense counsel has to deal with that because the agreement was likely and there was an objection to that. I think it was the other way around. Oh, the agreement was to me. You're right. I'm sorry. Yeah. I do think I agree with Judge Ropener. There is a big difference between the two. So that was an unfortunate mistake on my part. But unless the court has further questions, I'd ask for this court to remand for a new trial. Thank you. Thank you. Our thanks to both counsel. The case is taken under advisement.